IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FRANK JUNIOR DEGRAFFENREID, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | 1:15CV628 <br> 1:13CR147-1 |

RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

Petitioner, a federal prisoner, has submitted a Motion [Doc. #28][1] and an Amended Motion [Doc. #29] to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Respondent opposes Petitioner's Motions and has filed a Response [Doc. #36]. Petitioner filed a *pro se* reply brief [Doc. #40], and his attorney filed a reply brief [Doc. #49]. For the reasons set out below, the Court recommends that Petitioner's Motion to Vacate Sentence, as amended, be denied, and that this action be dismissed.

Procedural History and Claims

On April 29, 2013, a grand jury returned a two-count indictment against Petitioner. He was charged with being a felon in possession of a handgun in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and of possessing a stolen handgun in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). Petitioner pled guilty to Count One, and Count Two was dismissed. The court sentenced Petitioner to 205 months in prison under the Armed Career Criminal Act (ACCA).

---

[1] Citations to the record will be to the criminal case unless otherwise indicated.

The Factual Basis [Doc. #14] filed in Petitioner's case shows that on February 25, 2013, Petitioner was the front seat passenger in a vehicle that was stopped by Chapel Hill, North Carolina, police officers because the vehicle's window tinting was too dark. The driver of the vehicle, Lee Baldwin, had a criminal history that involved weapon and drug convictions, and when the officers ran his name through police databases he was flagged as a person to "approach with caution." When officers approached, they noticed multiple air fresheners in the vehicle, which the officers thought may indicate an attempt to camouflage the scent of narcotics. The record also reflects that the vehicle "smelled heavily of a masking agent." In addition, officers also discovered that database records reflected that the driver had prior convictions for multiple drug trafficking offenses, possession of a firearm by a felon, carrying a concealed weapon, and assault on a government official, that he had a case in the DEA's Narcotics and Dangerous Drugs Information System from 1995, and that he had an ATF case from 2006. (Tr. of Motion to Suppress Hearing [Doc. # 22] at 13-15, 55; Hearing Exhibits 2-4.) Baldwin seemed nervous and anxious to leave. Officers asked for a K-9 officer to respond to the traffic stop.

In addition to the driver, the vehicle held Petitioner and one other passenger. Petitioner identified himself to the officers as "Leroy Clayton." When the officers ran this name and identification through police databases, it was found that Leroy Clayton had a significant criminal history and was flagged as one to be "approached with caution." His criminal history included recent convictions for assault and prior convictions for assault on an officer, common law robbery, and conspiracy to commit armed robbery. (Tr. of Motion to Suppress Hearing

2

[Doc. # 22] at 60; Hearing Exhibits 2-4.) The other passenger, a female, also had a significant criminal history, including prior convictions for felony drug trafficking offenses, carrying a concealed weapon, and resisting a public officer. (Id.)

When the narcotics K-9 officer arrived at the traffic stop, the officers decided to have the occupants get out of the vehicle. One of the officers asked Petitioner to step out of the vehicle and frisked him for weapons. He discovered a .380 caliber Micro Desert Eagle handgun in Petitioner's pants pocket. The firearm was determined to have been stolen. Officers took Petitioner into custody and subsequently recovered from Petitioner a small bag with white powder in it which tested positive for cocaine. Officers also determined Petitioner's true identity and determined that Petitioner had multiple felony convictions.

Before Petitioner pled guilty, the trial court denied his motion to suppress the firearm. Petitioner's counsel argued that officers extended the traffic stop for too long a period of time before the K-9 officer arrived, in violation of Petitioner's Fourth Amendment rights. The court found that the traffic stop was not unnecessarily prolonged beyond the time needed to conduct its purpose and that the officers were diligently performing their routine duties of a traffic stop during the encounter. Petitioner's plea agreement allowed him to appeal that decision, and he filed a notice of appeal on that basis. However, the Fourth Circuit Court of Appeals agreed with the district court and found no Fourth Amendment violation. See United States v. Degraffenreid, 583 F. App'x 41 (4th Cir. 2014).

Petitioner then filed the present Motion to Vacate Sentence. In his original Motion, Petitioner argued that he received ineffective assistance of counsel because counsel failed to

"fact find" with regard to his prior state convictions, failed to impeach the testimony of the officers involved in his traffic stop, failed to disclose to Petitioner exculpatory evidence, and failed to permit Petitioner to inspect minutes of the grand jury proceeding. (Motion [Doc. #28].) The Court subsequently allowed Petitioner to amend his Motion to include a claim pursuant to Johnson v. United States, 135 S. Ct. 2551 (2015). In that new claim, Petitioner argued that his conviction for common law robbery in North Carolina no longer qualifies as a predicate offense for ACCA purposes.

In his *pro se* Reply brief, Petitioner explicitly abandons all of his claims except his claim that counsel rendered ineffective assistance by not challenging his frisk and his claim that his ACCA sentence is improper under Johnson. (Reply [Doc. #40] at 2 n.1.) Therefore, the Court will address only these two issues.[2] With respect to the Johnson claim, Respondent argues that even if Petitioner's prior conviction for common law robbery is infirm under Johnson, Petitioner's multiple convictions for Breaking and Entering are still valid ACCA predicate convictions. (Response [Doc. #36].) With respect to the ineffective assistance of counsel claim, Respondent argues that Petitioner has not shown ineffective assistance of counsel.

Discussion

I.   Ineffective Assistance of Counsel

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984).

---

[2] The Court notes that Petitioner's remaining claims are without basis in any event, and Petitioner himself acknowledges in his Reply that the arguments originally advanced were "inarticulate and devoid of merit."

With respect to the first prong of Strickland, a petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, to show prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Here, counsel filed a motion to suppress any evidence arising from the traffic stop, including the handgun that Petitioner possessed. At the hearing on that motion, counsel cross-examined the officers involved in the traffic stop and argued that the stop violated Petitioner's Fourth Amendment rights. (Tr. of Motion Hg. [Doc. #22].) In those proceedings, Petitioner's counsel focused upon the length of the traffic stop rather than on the question whether the officer properly conducted the frisk of Petitioner. Petitioner now contends that counsel should have argued that the frisk was unconstitutional, and that the failure to do so constitutes ineffective assistance of counsel.

In considering Petitioner's contentions, the Court notes that there are two requirements for conducting a lawful frisk: (1) that the officer conducted a lawful stop; and (2) that during the encounter the officer reasonably suspects that the person is armed and thus dangerous. United States v. Robinson, 846 F.3d 694, 700 (4th Cir. 2017); see also Arizona v. Johnson, 555 U.S. 323 (2009); United States v. Wright, 585 F. App'x 296 (4th Cir. 2014) ("During a traffic stop, the passenger may be required to exit the vehicle without any indication that the passenger poses a risk to officer safety. Additionally, if the officer has reasonable suspicion that a passenger is armed or is engaged in criminal activity, the officer may pat down the passenger for weapons."

(internal citations omitted)). In the present case, there is no question that the initial stop of the vehicle was lawful based on the window tint violation. Petitioner nevertheless contends that counsel should have argued that his frisk was unconstitutional because the officer lacked a reasonable suspicion that he was armed and dangerous. However, this overlooks the evidence known by the officers at the scene that the driver of the vehicle had an extensive criminal history, was flagged as one who should be "approached with caution" because of prior convictions involving drugs and weapons, and had a prior DEA case from 1995 and ATF case from 2006. Officers also knew that the name Petitioner had provided, "Leroy Clayton," had an extensive criminal history involving convictions for assault, including assault on an officer, as well as felony common law robbery and felony conspiracy to commit armed robbery, and was flagged as one who should be "approached with caution." The passenger in the back seat of the vehicle also had a criminal history with felony convictions for weapons and drugs with a notation to "approach with caution." Notably, officers also knew that the vehicle had "very heavy window tint" in violation of state law, "smelled heavily of a masking agent," and contained multiple air fresheners, consistent with an attempt to camouflage the scent of narcotics. In addition, the driver "seemed a little nervous" and anxious to leave, and officers had seen a pair of gloves in the vehicle that looked like the gloves that police officers wear when shooting their weapons, which made the officers cautious regarding whether a weapon might be present. (Tr. of Motion Hg. [Doc. #22] at 16-17, 33.) Additionally, the presence of multiple individuals in the vehicle, who were all being asked to exit the vehicle, also contributed to the risk of danger. (Tr. of Motion Hg. [Doc. #22] at 27-28.) Finally, any challenge to the frisk would have required

6

Petitioner to rely on the information as to "Leroy Clayton," the false name provided by Petitioner. That is, Petitioner would have had to rely on his lie to officers regarding his identity as part of his argument that officers lacked reasonable suspicion based on the information available to officers about "Leroy Clayton." Under these circumstances, it was reasonable for counsel to choose to focus his attack on the length of the stop rather than on whether the frisk of Petitioner was constitutional. This strategic decision by counsel is reflected in a letter sent to Petitioner by the Federal Public Defender's Office shortly after the sentencing hearing.[3] Petitioner included a copy of this letter with his Motion, and the letter includes a paragraph apparently responding to Petitioner's contentions regarding the frisk itself. That letter from Petitioner's counsel to Petitioner reflects that counsel considered the potential challenge to the frisk but concluded that it was not as strong an argument and therefore "agreed with [Petitioner] (and still do) that the length of the stop and frisk is our best argument." (See Letter [Doc. #28 at 19].) Petitioner has failed to show that this strategy of counsel was unreasonable. Indeed, strategic decisions of counsel "after extensively investigating the law and facts relevant to any and all probable options are virtually unchallengeable." Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995); see Strickland, 466 U.S. at 689. Therefore, Petitioner has not met the first prong of the Hill v. Lockhart standard.

Additionally, Petitioner has not shown that any prejudice resulted to him as a result of counsel's decision not to challenge his frisk. Petitioner's argument that his frisk was invalid was

---

[3] Petitioner was represented by the Federal Public Defender's Officer throughout the proceedings. The letter was written by the Assistant Federal Public Defender who began handling Petitioner's case prior to sentencing, and appears to reflect the ongoing strategy of the defense.

unlikely to succeed, given all of the indicators set out above that would provide a basis for suspecting that Petitioner might be armed at the time of the stop. See also United States v. George, 732 F.3d 296, 300 (4th Cir. 2013) (noting that "multiple factors may be taken together to create a reasonable suspicion even where each factor, taken alone, would be insufficient . . . . Thus, we will not find reasonable suspicion lacking based merely on a piecemeal refutation of each individual fact and inference." (internal quotations omitted)); United States v. Brooks, 685 F. App'x 229 (4th Cir. April 19, 2017); Robinson, 846 F.3d at 699-701. Petitioner points to several cases from the United States Court of Appeals for the Fourth Circuit as supporting his argument that the frisk was illegal and that "'cobbling together a set of facts that falls [far] short of establishing reasonable suspicion'" in order to justify frisks is a concern. (Reply [Doc. #40] at 4 (quoting United States v. Powell, 666 F.3d 180, 183 (4th Cir. 2011) and citing United States v. Massenburg, 654 F.3d 480, 482 (4th Cir. 2011), United States v. Digiovanni, 650 F.3d 498, 512 (4th Cir. 2011), and United States v. Foster, 634 F.3d 243 (4th Cir. 2011).))

However, the cases cited by Petitioner do not demonstrate that his attorney would have had a winning argument in the present case. Massenburg, Digiovanni, and Foster all deal generally with the concepts of reasonable suspicion and stop and frisk searches by police officers, but they are factually dissimilar from the present case, which does not lend them to direct comparisons. While Powell has some similarities, Petitioner's case also contains several key factors absent from Powell. First, in this case, officers noticed multiple air fresheners and the vehicle "smelled heavily of a masking agent," which can be indicative of the presence of narcotics. See United States v. Myers, 2017 WL 3310971 (D.S.C. Aug. 3, 2017) (citing United

8

States v. Foreman, 369 F.3d 776, 785 (4th Cir. 2004) for the conclusion that the presence of several air fresheners on a rearview mirror supported reasonable suspicion because they are "commonly used to mask the smell of narcotics"); compare Digiovanni, 650 F.3d at 513 (noting the absence of any air fresheners or other suspicious odors as weighing against reasonable suspicion). Drugs are often closely associated with the presence of firearms. See generally United States v. Manigan, 592 F.3d 621, 629-30 (4th Cir. 2010); United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998). Second, the officers noticed the presence of gloves in the car near Petitioner, resembling those worn by officers for shooting.[4] Third, Baldwin, the driver, was somewhat nervous or anxious to leave. Finally, three individuals were being asked to exist the vehicle, raising some risk of danger, and the police were aware that all three individuals had prior convictions, as opposed to mere charges, for drug offenses, firearm offenses, and/or violent or assaultive behavior. Specifically as to Petitioner, officers were aware that "Leroy Clayton," which was the name given by Petitioner, had convictions for assault, including assault on an officer, as well as felony common law robbery and felony conspiracy to commit armed robbery. In the circumstances, Petitioner has not shown that there is a reasonable probability that but for counsel's failure to challenge his frisk, the result of the proceeding would have been different. Therefore, he also fails to meet the second prong of the Strickland standard.

---

[4] Specifically, the officer testified that when he opened the passenger door where Petitioner was seated in the vehicle, he observed "a pair of gloves that kind of looked like gloves that police officers wear," specifically the kind of gloves that officers wear "when we shoot our weapon," which caused him to "think there might be a weapon or something in the vehicle" and made him "a little bit more cautious of what's going on because you don't normally see that." (Hrg. Tr. at 16-17.)

9

For all of these reasons, Petitioner's claim of ineffective assistance of counsel should be denied.

II. Claim under Johnson v. United States

Petitioner also claims that his North Carolina conviction for common law robbery is infirm as an ACCA predicate conviction under Johnson v. United States. Respondent does not contend otherwise, but argues that even if that is so, Petitioner's convictions for Breaking and Entering in North Carolina support his ACCA sentence. Petitioner responds by arguing that it is improper for the court to rely upon those convictions because the Government did not rely upon them earlier as ACCA predicate convictions. (Pet.'s Reply [Doc. #40] at 8.). However, Petitioner's PSR listed all six of Petitioner's Felony Breaking and Entering convictions as qualifying ACCA predicate convictions (PSR ¶ 20), and Petitioner did not object to these convictions as ACCA predicates (see Addendum to Presentence Report). See also Hodge v. United States, No. 1:10CR441-1, 2016 WL 7480397, at *3 (M.D.N.C. Dec. 29, 2016) ("The Fourth Circuit has held that, on a motion to vacate, the district court should uphold a defendant's sentence as an armed career criminal, even if the sentencing court relied on offenses that no longer qualify as the basis for the enhancement, as long as the defendant still has three qualifying offenses on his record."). Therefore, the Court rejects Petitioner's contention that his Breaking and Entering convictions cannot be considered.[5]

---

[5] Moreover, the Court notes that even if Petitioner prevailed on this contention, the potential relief in this case would be a resentencing hearing, that at any such resentencing hearing these Breaking and Entering convictions could still be considered, and that Petitioner would still be sentenced as an Armed Career Criminal given the current legal authorities set out herein.

Petitioner through counsel also contends that Petitioner's six prior convictions for North Carolina Felony Breaking and Entering do not qualify as ACCA predicates in light of Mathis v. United States, 136 S. Ct. 2250 (2016) and United States v. White, 836 F.3d 437 (4th Cir. 2016). (Reply [Doc. #49].) However, this argument has also been previously considered and rejected. See Carr v. United States, 1:13CR98-1, 2016 WL 7912009, at *2 n.2 (M.D.N.C. Dec. 16, 2016), adopted by 2017 WL 280745 (M.D.N.C. Jan. 20, 2017). Mathis and White involved state burglary statutes that swept more broadly than generic burglary. Id. In contrast, North Carolina's Breaking and Entering statute does not extend beyond buildings and does not sweep more broadly than generic burglary. United States v. Mungro, 754 F.3d 267, 272 (4th Cir. 2014) (N.C. Gen. Stat. § 14-54(a) sweeps no more broadly than the generic elements of burglary); United States v. Bowden, 975 F.2d 1080, 1084 (4th Cir. 1992) (N.C. Gen. Stat. § 14-54(a) meets the definition of generic burglary); see also United States v. Beatty, __ F. App'x __, 2017 WL 3225644 (4th Cir. July 31, 2017) (rejecting the contention that Mathis would change the conclusion set out in Mungro, and further finding that "North Carolina courts construe North Carolina Breaking and Entering's 'building' element in a manner that tracks generic burglary's 'building' element. . . . . North Carolina Breaking and Entering's 'building' element sweeps no broader than generic burglary's 'building' element."). Therefore, Petitioner's Breaking and Entering convictions remain as valid predicate convictions in this case, and Johnson does not provide a basis for relief.

For all of these reasons, Petitioner's Motion should be denied and this action dismissed.

IT IS RECOMMENDED that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, as amended, [Doc. #28] be denied, and that this action be dismissed.

This, the 7th day of December, 2017.

                                        /s/ Joi Elizabeth Peake
                                       United States Magistrate Judge